```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DAVID WALDMAN and                                :
DIANE WALDMAN,
                                                 :       MEMORANDUM
                      Plaintiffs,                        DECISION AND ORDER
                                                 :
           - against -                                   08 Civ. 6405 (FM)
                                                 :
MARISOL ESCOBAR,
                                                 :
                      Defendant.
------------------------------------------------------------x
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  03/27/2009
```

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

This diversity action brought by plaintiffs David and Diane Waldman (the "Waldmans") arises out of their purchase of two sculptures in 2002 from defendant Marisol Escobar ("Escobar"). The Waldmans allege that Escobar induced them to renounce their interest in one of the sculptures by fraudulently representing that it was damaged beyond repair and therefore unavailable for sale. On September 18, 2008, the parties consented to my exercise of jurisdiction over this case for all purposes pursuant to 28 U.S.C. § 636(c). (Docket No. 5). Thereafter, Escobar moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Docket No. 10).

For the reasons set forth below, Escobar's motion is granted in part and denied in part.

II.     Background

Construing the Waldmans' amended complaint (Docket No. 9 ("Complaint" or "AC")) and the exhibits thereto in the light most favorable to them, the relevant facts may be summarized as follows:

In October 2002, the Waldmans agreed to purchase from Escobar two sculptures known as "Mimi" and "Magritte" after viewing them in a Marlborough Gallery catalogue.  (AC ¶¶ 6, 7).  At her studio, Escobar gave the Waldmans two signed invoices, dated October 18, 2002, reflecting prices of $35,000 for Mimi and $25,000 for Magritte.  (Id. ¶ 8, 10 & Ex. A).  Escobar arrived at these valuations by halving the retail prices sought by the gallery, where her work previously had been on display.  (Id. ¶¶ 6, 9).  That same day, the Waldmans issued Escobar a check in the amount of $60,000 for both sculptures.  (Id. ¶ 11 & Ex. A).  Subsequently, in November 2002, they added the pieces to the coverage under their insurance policy.  (Id. ¶ 12).

Only one of the sculptures, Magritte, was delivered to the Waldmans.  (Id. ¶ 13).  Escobar initially told the Waldmans that Mimi would not be available for several months because she had a prior commitment to show it at the gallery.  (Id. ¶ 14).  Nevertheless, on January 13, 2003, Escobar deposited the Waldmans' check for both sculptures.  (Id. ¶ 15).

In mid-February 2003, Escobar informed the Waldmans that Mimi had been irreparably damaged and would be impossible to replace. (Id. ¶ 16). Relying on this representation, the Waldmans accepted from Escobar a refund check, dated February 23, 2003, in the amount of $35,000. (Id. ¶ 17). In March 2008, however, the Waldmans saw a picture of an apparently-undamaged Mimi in that month's issue of Art in America, which described it as one of the works that Escobar "had saved for herself." (Id. ¶¶ 19, 20). The Waldmans therefore sent Escobar two letters, dated April 7 and 20, 2008, demanding that she complete the sale of Mimi for the 2002 contract price. (Id. ¶ 21). Escobar refused to give the Waldmans the sculpture, which had been offered for sale by the gallery in 2002 for $70,000 and currently is worth at least $75,000. (Id. ¶¶ 22, 23)

The Waldmans commenced this action on July 17, 2008. (Docket No. 1). After an October 28, 2008, telephone conference during which defense counsel raised jurisdictional issues, the Waldmans amended their complaint on November 18, 2008, alleging claims of (a) breach of contract, (b) unjust enrichment, and (c) fraud. (AC ¶¶ 24-35). Escobar then filed her motion to dismiss on December 8, 2008. (Docket No. 10).

III.   Discussion

   A.   Standard of Review

Under Rule 12(b)(1), a complaint must be dismissed if there is no subject matter jurisdiction over the claim. Under Rule 12(b)(6), a complaint is subject to dismissal if it fails to state a claim upon which relief can be granted. In deciding either

3

type of motion, a court must accept the material factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994).

As the Supreme Court recently explained, the issue that must be decided under Rule 12(b)(6) is whether the plaintiff's claims are "plausible."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965-66 (2007).  This requires the Court to apply a "flexible" standard, pursuant to which a pleader must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."  Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis omitted).  In deciding the legal sufficiency of the claim, a court may consider any written instrument attached as an exhibit or incorporated by reference.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

When faced with a motion to dismiss pursuant to both Rules, a court should "decide the 'jurisdictional question [under Rule 12(b)(1)] first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'"  Tirone v. N.Y. Stock Exch., Inc., No. 05 Civ. 8703 (WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting Magee v. Nassau County Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).  In resolving an issue of subject matter

jurisdiction under Rule 12(b)(1), a court is not limited to the face of the complaint and may consider evidence outside the pleadings. Phifer v. City of New York, 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists to hear the plaintiff's claims. Id. (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

    B.    Motion to Dismiss

Escobar has moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) on the grounds that (i) the breach of contract claim is barred by the statute of limitations, (ii) the unjust enrichment claim fails as a matter of law, and (iii) the remaining fraud claim does not meet the $75,000 jurisdictional amount required by 28 U.S.C. §1332(a). (Docket No. 10). The Waldmans filed opposition papers on December 22, 2008, (Docket No. 12 ("Pls.' Opp.")), to which Escobar replied on January 7, 2009, (Docket No. 13 ("Reply")). The motion therefore is fully submitted.

        1.    Rule 12(b)(6)

As noted, a court ordinarily should address a Rule 12(b)(1) motion first because the disposition of a Rule 12(b)(6) motion constitutes a decision on the merits. See Tirone, 2007 WL 2164064, at *3. In this case, however, Escobar's motion to dismiss is structured so that the jurisdictional question becomes relevant only if the breach of contract and unjust enrichment claims both fail. For that reason, I will turn first to Escobar's arguments under Rule 12(b)(6) that the Waldmans' breach of contract claim is

barred by the statute of limitations and that their unjust enrichment claim fails as a matter of law. (See Docket No. 11 ("Def.'s Mem.") at 1).

        a.        Breach of Contract

Under Article 2 of the New York Uniform Commercial Code, a four-year statute of limitations applies to a breach of contract action arising out of the sale of goods. N.Y. U.C.C. § 2-725(1). As Escobar correctly observes, (Def.'s Mem at 5; Reply at 2-3), application of the statute is not discretionary. See N.Y. C.P.L.R. § 201 ("No court shall extend the time limited by law for the commencement of an action."). However, New York law also provides that the doctrines of equitable estoppel and equitable tolling may overcome a statute of limitations defense if the "plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Sanders v. New York City Dep't of Corr., No. 07 Civ. 3390 (SHS), 2009 WL 222161, at *4 (S.D.N.Y. Jan. 30, 2009) (quoting Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007)); see also N.Y. Gen. Obli. Law § 17-103(4)(b) (recognizing the "power of the court to find that by reason of conduct of the party . . . it is inequitable to permit him to interpose the defense of the statute of limitation").

As a general matter, the equitable estoppel doctrine "applies where, although the plaintiff is aware of his cause of action, his delay is excused because either the defendant misrepresented the length of the limitations period or 'lulled the plaintiff into believing it was not necessary to commence the litigation.'" Netzer v. Continuity

6

Graphic Assocs., Inc., 963 F. Supp. 1308, 1316 (S.D.N.Y. 1997) (quoting Cerbone v. Int'l Ladies' Garment Workers' Union, 768 F.2d 45, 50 (2d Cir. 1985)).  In contrast, equitable tolling applies to a "plaintiff who is unaware of his cause of action . . . [because] the defendant's conduct concealed [it] from the plaintiff."  Yu G. Ke v. Saigon Grill, Inc., No. 07 Civ. 2329 (MHD), 2008 WL 5337230, at *12 (S.D.N.Y. Oct. 21, 2008) (internal quotation marks omitted).  In order to invoke either doctrine, a plaintiff must establish that his ignorance of the cause of action or of the need to commence the litigation "is not attributable to a lack of diligence on his part."  Netzer, 963 F. Supp. at 1316.

       At this preliminary stage, the Waldmans' allegations with respect to the sale of Mimi are sufficient for their breach of contract claim to survive under the doctrine of equitable tolling.  The Waldmans allege that Escobar fraudulently stated that Mimi had been "damaged beyond repair and that she could not make them a new one," thereby concealing her breach of contract and the resulting cause of action.  (AC ¶ 16).  They further argue that short of searching Escobar's private studio and residence, where Escobar apparently maintained Mimi as part of her personal collection, they could not determine the veracity of her statement.  (Pls.' Opp. at 4).  Although Escobar suggests that the Waldmans would have discovered the breach had they simply called the gallery, she concedes that this assertion goes beyond the four corners of the Complaint.  (Reply at 4 n.†).  For this reason, she argues instead that the Court can infer from the Complaint's silence that the Waldmans failed to conduct any reasonable investigation to determine


"whether there was a basis for [Escobar's] refusal to sell the sculpture." (Id.). However, the reasonableness of the Waldmans' efforts, if any, to uncover the fraud is a fact issue that cannot be resolved at the pleadings stage. Accordingly, Escobar's motion to dismiss the Waldmans' breach of contract claim as time-barred must be denied.

    b.  Unjust Enrichment

  Under New York law, it is improper to seek damages for unjust enrichment "in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987); accord Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 587 (2d Cir. 2006) ("[Plaintiffs] may not recover under a theory of unjust enrichment, inasmuch as the valid and enforceable written [agreements] governed the particular subject matter of this case.").

  Ordinarily, a plaintiff is not required to elect her remedies at the pleadings stage when it "ha[s] not been determined with finality that there was a valid contract between the parties, or where one of the parties dispute[s] the validity of the contract." Spirit Partners, L.P. v. audiohighway.com, No. 99 Civ. 9020 (RJW), 2000 WL 685022, at *8 (S.D.N.Y. May 25, 2000). In this case, however, the Waldmans clearly contend that the sale of Mimi was governed by a valid written contract. As for Escobar, although she

argues that the breach of contract claim is time-barred, she does not appear to dispute the existence of the original contract or its scope.

In sum, because "the parties' relationship was defined in [a] written contract[], the validity and enforceability of which [is] not in question," the Waldmans' unjust enrichment claim must be dismissed. GMA Accessories, Inc. v. ePartners Inc., No. 07 Civ. 8414 (LAK), 2008 WL 781188, at *1 (S.D.N.Y. Mar. 19, 2008) (citing Clark-Fitzpatrick, 70 N.Y.2d at 388-89).

2.  Rule 12(b)(1)

In order to invoke the Court's diversity jurisdiction, a plaintiff must show that the parties are of diverse citizenship – a fact which appears to be uncontested here – and that the amount in controversy exceeds $75,000, excluding interest or costs. 28 U.S.C. § 1332(a). The amount in controversy is determined at the time the complaint is filed and is presumed to be a good faith representation, rebuttable only if the defendant can show "to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." Remsen Funding Corp. v. Ocean West Holding Corp., No. 06 Civ. 15265 (DLC), 2007 WL 3254403, at *2 (S.D.N.Y. Nov. 1, 2007) (quoting Colavito v. New York Organ Donor Network, Inc., 438 F.3d 214, 221 (2d Cir. 2006)).

In their fraud claim, the Waldmans allege that, as a matter of equity, the Court should "reinstate the contract . . . and enjoin [Escobar] to transfer [Mimi]" to them.

(AC ¶ 35). "The Supreme Court has held that, in actions for declaratory or injunctive relief, which . . . are equitable in nature, the amount in controversy is measured by the value of the object of the litigation." DiTolla v. Doral Dental IPA of N.Y., 469 F.3d 271, 276 (2d Cir. 2006) (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)).  In that regard, New York law provides that fraud damages "are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."  Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996); Reno v. Bull, 226 N.Y. 546, 553 (1919) ("All elements of profit are excluded.  The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong.").  Thus, the Waldmans cannot recover any lost profits as part of their fraud claim.

As the Complaint makes clear, the Waldmans agreed to purchase Mimi for $35,000, but this sum was fully refunded to them.  (AC ¶¶ 8, 17).  Accordingly, on one view of the facts, they may not have any fraud damages.  At best, the Waldmans may be entitled to a maximum of $35,000 (exclusive of interest and costs) on their fraud claim.  (See Def.'s Mem. at 13).  This claim therefore falls short of the required $75,000 jurisdictional amount.

Nevertheless, by failing to attack the Waldmans' contract claim under Rule 12(b)(1), Escobar impliedly concedes that this court has subject matter jurisdiction to hear it.  The survival of the contract claim consequently shields the fraud claim from Rule

10

12(b)(1) dismissal, at least at the pleadings stage, because federal courts may exercise supplemental jurisdiction over any state law claims "that are so related to claims in the action within . . . original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, that standard clearly is met because the Waldmans' fraud claim arises out of the same nucleus of facts as their diversity jurisdiction contract claim. Accordingly, Escobar's motion to dismiss for lack of subject matter jurisdiction must be denied.

IV.   Conclusion

For the reasons set forth above, Escobar's motion to dismiss, (Docket No. 10), is granted with respect to the Waldmans' second claim for relief alleging unjust enrichment, but denied in all other respects.

Additionally, in light of this disposition, the Court will hold a telephone conference on April 13, 2009, at 2 p.m. The Waldmans' counsel should initiate the conference by calling Chambers at (212) 805-6727.

SO ORDERED.

Dated:   New York, New York
         March 27, 2009

_____
FRANK MAAS
United States Magistrate Judge

11

Copies to:

Vivian Shevitz, Esq.
Fax:  (914) 763-2322

John B. Koegel, Esq.
The Koegel Group LLP
Fax:  (212) 337-1103